# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER RAND, | ) Old case #1:08-CV-01861 OWW JMD HC |
| Petitioner, | ) FINDINGS AND RECOMMENDATION |
| | ) REGARDING PETITION FOR WRIT OF |
| v. | ) HABEAS CORPUS |
| JAMES D. HARTLEY, | ) |
| Respondent. | ) |

Christopher Rand ("Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## **PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a 1974 conviction for kidnaping for robbery while armed, robbery, attempted robbery, rape with force, assault with intent to rape, and vehicle theft. (Pet. at 2; Answer at 1). Petitioner is serving a sentence of seven years to life. (Pet. at 2).

Petitioner does not challenge his conviction in this action; rather, Petitioner challenges the decision by the California Board of Parole Hearings (the "Board") to deny him parole. Petitioner appeared before the Board on June 27, 2007. (*See* Transcript of Parole Hearing, at 1).

On April 27, 2008, Petitioner filed a petition for writ of habeas corpus with the Los Angeles County Superior Court challenging the Board's denial of parole. (*See* Answer Ex. 1). The Superior Court issued a reasoned decision denying the petition on August 11, 2008. (*See* Answer Ex. 2).

Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal and the California Supreme Court. (*See* Answer Exs. 3, 5). The State courts issued summary denials of those respective petitions. (*See* Answer Exs. 4, 6).

On November 19, 2008, Petitioner filed the instant federal petition for writ of habeas corpus. Respondent filed a response to the petition on May 18, 2009. Respondent admits that Petitioner has exhausted his state remedies and that the instant petition is timely. (Answer at 2). Petitioner did not file a reply to Respondent's answer.

## **FACTUAL BACKGROUND**

The facts of the commitment offense were considered by the Board in determining whether Petitioner was suitable for parole and are thus relevant to the Court's inquiry into whether the State court's decision upholding the Board's decision was objectively unreasonable. *See* Cal. Code Regs., tit. 15, § 2402(c)(1). The Board incorporated into the record a summary of the offense which had been taken from a June 2002 Board report. (Transcript of Parole Hearing, at 23-27).

The record reflects that the life crimes involved two separate incidents. In the first incident, the victim reported that Petitioner came up behind her; at which point, she felt an object at her back. (Id. at 24). The victim stated that Petitioner had a gun, which he put in his pocket. (Id). Petitioner took the victim to a house located on Cochrane Street in Los Angeles, where he asked for money and started choking her. Petitioner took $15 from her purse, ordered her to take off her clothes, and took another $116, which she had in her brassiere. (Id). Petitioner then told her the victim that he was going to have sex with her. In response, the victim told Petitioner that she had a disease. She repeated that she had a disease again after the Petitioner rubbed her and insisted he was going to have sex with her; Petitioner then let the victim dress and leave. (Id).

Three days later, Petitioner approached the second victim and asked her if she would sell some clothes he had stolen. (Id. at 25). The victim refused. Petitioner then got into the victim's car, which had run out of gas. A stranger helped pushed the car to a gas station, where Petitioner and the victim obtained gas for the victim's car. (Id). Petitioner then drove them to the cleaners. At one point Petitioner offered the victim $50 for sex but the victim refused, stating she was not a prostitute. Petitioner drove them into an alley, where he told the victim to take off her clothes. When the victim refused, Petitioner pulled a razor and said whether she took the money he offered her, he would rape her anyways. (Id. at 26-27). The victim began to take off her clothes but Petitioner then said he changed his mind and she put her clothes back on. (Id. at 26). Petitioner started driving again and

stopped at the house on Cochrane Street. Petitioner gave the victim the razor, which she threw out the window. Once inside the house, Petitioner grabbed the victim by the neck, told her he had a weapon in his boots, and then raped the victim. (Id). Petitioner then drove the victim to a liquor store, where he told her to get some cigarettes for him. When the victim emerged from the store, Petitioner had left with her car. (Id).

Petitioner claims that both encounters were consensual. (Id. at 17-36).

### DISCUSSION

**I.   Jurisdiction**

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution stemming from the Board's denial of parole. Petitioner initiated this action and the denial of parole occurred when Petitioner was incarcerated at Avenal State Prison, which is located in Kings County. (Pet. at 2). As Kings County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

**II.   ADEPA Standard of Review**

All petitions for writ of habeas corpus filed after 1996 are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted by Congress on April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in 2008 and is consequently governed by AEDPA's provisions. *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). While Petitioner does not challenge his underlying conviction, the fact that

Petitioner's custody arises from a State court judgment renders section 2254 the exclusive vehicle for Petitioner's habeas petition. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a State court judgment even though he is challenging the denial of his parole).

Under AEDPA, a petition for habeas corpus "may be granted only if [Petitioner] demonstrates that the State court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see also Lockyer*, 538 U.S. at 70-71. As a threshold matter, this Court must "first decide what constitutes 'clearly established federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the State court renders its decision." *Id.*

Finally, this Court must consider whether the State court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the State court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the State court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the State court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant State court decision applied clearly established federal law erroneously or incorrectly.

Rather, that application must also be unreasonable." *Id.* at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established law was "objectively unreasonable." *Id.* at 409.  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a State court decision is objectively unreasonable.  *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

Petitioner bears the burden of establishing that the State court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).  AEDPA requires that a federal habeas court give considerable deference to State court's decisions. The State court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1).  Furthermore, a federal habeas court is bound by a State's interpretation of its own laws.  *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

Thus, the initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).  Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order).  The Ninth Circuit has further stated that where it is undisputed that federal review is not barred by a State procedural ruling, "the question of which state court decision last 'explained' the reasons for judgement is therefore relevant only for purposes of determining whether the state court decision was 'contrary to' or an 'unreasonable application of' clearly established federal law." *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003).  Thus, a federal habeas court looks through ambiguous or unexplained State court decisions to the last reasoned decision in order to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Id*.

\\\

\\\

Here, the Los Angeles County Superior Court, the California Court of Appeal, and the California Supreme Court all adjudicated Petitioner's claims. (*See* Answer Exs. 2, 4, 6). As the California Court of Appeal and California Supreme Court issued summary denials of Petitioner's claims, the Court "look[s] through" those courts' decisions to the last reasoned decision; namely, that of the Superior Court. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

**III.    Review of Petitioner's Claim**

Petitioner raises two grounds for relief, contending that the Board violated his due process rights stemming from both the State and Federal constitution by denying him his liberty interest and by failing to set his base term.[1]

   *A.    Liberty Interest in Parole*

"We analyze a due process claim in two steps. '[T]he first asks whether there exist a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).

Respondent argues that Petitioner does not have a liberty interest in parole. (Answer at 2). The Ninth Circuit has held that a prisoner possess a liberty interest in parole where mandatory language in a State's statutory scheme for parole creates a presumption "that parole release will be granted when or unless certain designated findings are made, and thereby give rise to a constitutional liberty interest.'" *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (quoting *Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979) in holding that California's parole scheme gives rise to a cognizable liberty interest in release on parole). California Penal Code section 3041 contains the requisite mandatory language, thus vesting California prisoners "whose sentence provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due

---

[1] The Court notes that habeas corpus relief is not available in federal courts for violations of state law. *See Middleton v. Cupp,* 768 F.2d 1083, 1085 (9th Cir. 1985). Thus, the Court addresses only Petitioner's federal constitutional claims, though such claims are intertwined with state law as discussed *supra*.

Process Clause." *Irons*, 505 F.3d at 850; *see also McQuillion*, 306 F.3d at 903; *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003). Consequently, the Court finds that Petitioner has a protected liberty interest in a parole date.

A finding that a liberty interest exists does not end the Court's inquiry as the Due Process Clause is not violated where the denial of a petitioner's liberty interests follows the State's observance of certain procedural safeguards. *See Greenholtz*, 442 U.S. at 12. Respondent contends that due process merely entitles Petitioner the right to be heard and for the Board to state their reasons for denial. (Answer at 3). This contention is based on the argument that the "some evidence" standard does not constitute clearly established federal law and is not applicable to parole denials. (Id. at 5).[2] However, Respondent admits that a line of Ninth Circuit cases has found otherwise. (Id. at 5-6). Indeed, the Ninth Circuit has held that a prisoner's due process rights are implicated where there is no evidence to support the denial of parole and that the some evidence standard is applicable under AEDPA. *Irons*, 505 F.3d at 851; *see also Sass*, 461 F.3d at 1128-1129. "In *Superintendent, Mass. Correc. Inst. v. Hill* [472 U.S. 445 (1985)] the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record.'" *Sass*, 461 F.3d at 1128 (citations omitted). This evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest without imposing undue administrative burdens or threatening institutional interests. *Hill*, 472 U.S. at 455. The rationale espoused by the Ninth Circuit in *Irons*, *Sass*, and *Biggs* is compelling and the Court rejects Respondent's argument that the application of the "some evidence" standard to the parole context is improper under AEDPA.

\\\

\\\

---

[2] Respondent is correct in one respect; a parole release determination is not subject to all of the due process protections of an adversarial proceeding. *See Pedro v. Oregon Parole Board*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." *Id*. at 1399; *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987). Thus, an inmate is at least entitled to receive advance written notice of a hearing, be afforded an "opportunity to be heard" and told why "he falls short of qualifying for parole." *Greenholtz*, 442 U.S. at 16; *see also Pedro*, 825 F.2d at 1399. Here, the Court notes that Petitioner does not allege that he was deprived of any of these procedural safeguards.

Errors of state law generally do not give rise to habeas corpus relief as "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). However, the inquiry of "whether a state parole board's suitability determination was supported by 'some evidence'" is framed by the state statutes and regulations governing parole suitability. *Irons*, 505 F.3d at 851; *see Briggs*, 334 F.3d at 915. California law provides that after an eligible life prisoner has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs., tit. 15, § 2402(a); *see In re Dannenberg*, 34 Cal.4th at 1078, 1080. The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the California Code of Regulations. *See* Cal. Code Regs., tit. 15, § 2402; *Irons*, 505 F.3d at 851-852; *Biggs*, 334 F.3d at 915-916. The regulations permit consideration of "all relevant, reliable information available to the panel," and explicitly calls for consideration of "the base and other commitment offenses, including behavior before, during and after the crime." Cal. Code Regs., tit. 15, § 2402(b). Factors supporting a finding of unsuitability for parole include: the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; a record, prior to incarceration for the underlying offense, of violence; a history of unstable relationships with others; and serious misconduct while incarcerated. Cal. Code Regs., tit. 15, § 2402 (c); *see also In re Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

After reviewing the record, the Court does not find that the Los Angeles County Superior Court unreasonably applied the "some evidence" standard. *See* 28 U.S.C. § 2254(d)(1). As noted by Respondent, the Superior Court concluded that there was some evidence to support the Board's finding that Petitioner continued to pose a risk of danger to society and public safety. (Answer at 7-8; Answer Ex. 2 at 2). The Superior Court pointed to the manner in which the commitment offense had been perpetrated, Petitioner's history of assaultive behavior, Petitioner's serious disciplinary

infractions while incarcerated, and Petitioner's conduct during the parole hearing as evidence of Petitioner's current dangerousness. (Answer Ex. 2 at 2). The Superior Court concluded that "[i]t appears that [Petitioner] continues to have anger management issues and would benefit from self-help programming. These recent serious discipline problems and anger control issues demonstrate petitioner continues to pose an unreasonable risk of danger to society and are some evidence he is unfit for parole." (Id).

As the Superior Court and the Board did not rely solely on the commitment offense and Petitioner's pre-incarceration record, Petitioner cannot claim that his due process rights were violated by reliance on immutable factors.[3] Rather, as noted by the Superior Court, those two immutable factors, when combined with current factors, provided a nexus for finding that Petitioner posed a current risk of danger. The Board noted that Petitioner's history for assault was lengthy and included the fact that he was on probation for sexual perversion and kidnaping for robbery when he committed the life crimes. (Transcript at 44, 82). Additionally, Petitioner continued to have disciplinary issues once he was incarcerated, accruing sixteen serious disciplinary infractions. (Id. at 63). Three of the disciplinary infractions were relatively recent and two of the three were for mutual combat. (Id. at 52). Furthermore, Petitioner's psychological evaluation was troubling as the psychologist was unable to predict Petitioner's potential for violence within the free community. (Id. at 68-69). The psychologist opined that such a prediction could not be made as Petitioner had not explored the depth to which he had come to terms with the underlying causes of violence. (Id). Lastly, as noted by the Superior Court, the manner in which Petitioner conducted himself at the hearing demonstrated an inability to control his anger. The Court notes that the "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the disciplinary board were

---

[3] The Court recognizes that the California Supreme Court has held that even where the commitment offense was particularly egregious, reliance on this immutable factor *may* violate a petitioner's due process rights. *In re Lawrence*, 44 Cal.4th 1181, 1191 (Cal. 2008). In *Lawrence*, the California Supreme Court found that the intervening twenty-four years in which petitioner, now age sixty-one, had demonstrated, "extraordinary rehabilitative efforts specifically tailored to address the circumstances that led to her criminality, her insight into her past criminal behavior, her expressions of remorse, her realistic parole plans, the support of her family, and numerous institutional reports justifying parole" rendered "the unchanging factor of the gravity of petitioner's commitment offense" no longer probative of "her current threat to public safety, and thus provides no support for the Governor's conclusion that petitioner is unsuitable for parole at the present time." *Id*. at 1226.

without support or otherwise arbitrary.'" *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457). Considering Petitioner's current issues relating to anger management, as demonstrated by his behavior at the hearing and his serious disciplinary infractions, in light of his assualtive history prior to incarceration and the commitment offense, the Court finds that there is sufficient evidence upon which the Board relied upon in finding Petitioner posed a current risk of danger to society. Consequently, the State court opinion was not an unreasonable application of clearly established federal law and Petitioner is not entitled to habeas corpus on this ground.

### B.     *Matrix of Base Terms*

Petitioner also contends that the Board's failure to apply a matrix of base terms violates his due process rights. Title 15 of California Code of Regulation section 2403(c), requires the Board set a base term pursuant to a matrix of base terms. However, Petitioner's claim does not state a grounds for relief as California's regulations clearly establish that the setting of a base term under 2403(c) occurs *after* the initial determination that Petitioner is suitable for parole. *See Murphy v. Expinoza*, 401 F.supp.2d 1048, 1054 (C.D. Cal. 2005) (citing *In re Danneberg*, 34 Cal.4th 1061, 1078 (Cal. 2005) and Cal. Code Regs., tit. 15, § 2403(a) in stating, "absent a determination of parole suitability by the BPT, there is no 'base term' [citation]. Thus, petitioner's ongoing detention does not deprive petitioner of due process of law"). Consequently, Petitioner has no due process right to the application of the matrix term prior to a finding that he is suitable for parole and cannot obtain habeas corpus relief on this ground.

### RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to

1  Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and
2  filed within ten (10) *court* days (plus three days if served by mail) after service of the objections.
3  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The
4  parties are advised that failure to file objections within the specified time may waive the right to
5  appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

7  IT IS SO ORDERED.

8  **Dated:   March 15, 2010**             /s/ John M. Dixon
                                      UNITED STATES MAGISTRATE JUDGE